

**SIGNED this 04 day of June, 2009.**

_____
R. Thomas Stinnett
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                                            No. 08-15599
                                                                                                     Chapter 13
STEVEN FRAZIER CARPENTER
JACQUELYN JEAN CARPENTER,

      Debtor(s).

MEMORANDUM

      This case is before the court on the objection by the chapter 13 trustee to confirmation of the debtors' plan. The debtors filed their bankruptcy petition on October 17, 2008, and submitted their proposed chapter 13 plan on October 27, 2008. Two creditors and the chapter 13 trustee objected to confirmation of the plan. The creditors' objections were resolved at the first hearing on confirmation , and the hearing on the trustee's objection was continued. At the second hearing, the parties agreed to submit a stipulation of facts and briefs in support of their respective positions and the court took the matter under advisement. For the reasons set forth herein, the trustee's objection will be sustained.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(L) (2006).

The parties stipulate that the debtors' are above-median-income debtors since their annualized current monthly income on their means test, Form B22C, exceeds the median income for 2-person households in the state of Tennessee. The means test also reflects that the debtors have monthly disposable income of $669.02. In their plan, the debtors propose to pay unsecured creditors $40,142.00, or $669.02[1] multiplied by 60 months, in monthly payments of $3,828. The parties agree that these monthly payments will permit the debtors to pay $40,142.00 to unsecured creditors in less than 60 months. As above median-income debtors, the "applicable commitment period' for their chapter 13 plan payments is not less than 5 years as set forth in § 1325(b)(4)(A)(ii). However, this provision is "subject to subparagraph (B)." Subparagraph (B) permits the plan to be less than 5 years if the plan provides for payment in full of all allowed unsecured claims over a shorter period. The debtors' plan does not provide for payment in full of all allowed unsecured claims.

According to the trustee's objection, the plan fails to commit all of the debtors' projected disposable income for the "applicable commitment period" prescribed by 11 U.S.C. § 1325(b)(4). The trustee contends that the "applicable commitment period" requires the debtors to commit to their plan for a specific length of time, here, five years, regardless of their ability to pay the full amount in less than the "applicable commitment period." The debtors, however, contend that the "applicable commitment period" is simply part of an equation designed to calculate the dollar amount to be paid to unsecured creditors without regard to the length of time actually required to accomplish the task.

---

[1] The court questions the calculation of the parties' stipulated Form B22C "disposable income" amount of $669.02. Some expenses disclosed in the Form B22C calculation appear to represent installment payments for secured property to be surrendered under the proposed plan. See In re Spurgeon, 378 B.R. 197, 206 (Bankr. E. D. Tenn. 2007).

The relevant provisions of the Bankruptcy Code are as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> . . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> . . . .
>
> (4) For purposes of this subsection, the "applicable commitment period"---
> (A) subject to subparagraph (B), shall be—
> (i) 3 years; or
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
> . . . .
> (II) in the case of a debtor in a household of 2, 4, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;
> . . . and
>
> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. §1325(b)(2000).

A majority of courts addressing this issue adopts the trustee's "temporal" interpretation of "applicable commitment period" which requires commitment of plan payments to a specified period of time where the dividend to unsecured creditors is less than one hundred percent. *See, e.g., In re Frederickson,* 545 F.3d 652, 660(8th Cir. 2008); *In re Heyward,* 386 B.R. 919, 923 (Bankr.S.D.Ga.2008); *In re Nance,* 371 B.R. 358, 372 (Bankr.S.D.Ill.2007); *In re Mullen,* 369 B.R. 25, 29 (Bankr.D.Or.2007);*In re Grant,* 364 B. R. 656, 662 (Bankr.E.D.Tenn.2007); *In re Luton,* 363 B.R. 96, 101 (Bankr.W.D.Ark.2007); *In re Slusher,* 359 B.R. 290, 305 (Bankr.D.Nev.2007); *In re Casey,* 356 B.R. 519, 527 (Bankr.E.D.Wash.2006); *In re Cushman,* 350

B.R. 207, 212 (Bankr.D.S.C.2006); *In re Girodes*, 350 B.R. 31, 35 (Bankr. M.D.N.C. 2006); *In re Davis,* 348 (B.R. 449, 458 (Bankr.E.D.Mich.2006); *In re Gress,* 344 B.R. 919, 923 (Bankr.W.D.Mo. 2006); *In re Dew,* 344 B.R. 655, 661 (Bankr.N.D.Ala.2006); *In re Schanuth,* 342 B.R. 601, 607-08 (Bankr.W.D.Mo.2006); *In re McGuire,* 342 B.R. 608, 615 (Bankr.W.D.Mo.2006); *In re Alexander,* 344 B.R. 742, 751 (Bankr.E.D.N.C.2006); *In re Beasley,* 342 B.R. 280, 284 (Bankr.C.D.Ill.2006); *In re Crittendon,* 2006 WL 2547102 at *5 (Bankr.M.D.N.C.2006). *See also, In re Kagenveama*, 541 F.3d 868, 875 (9th Cir. 2008)(plain language of statue supports trustee's interpretation that "applicable commitment period" mandates a temporal measurement, however, it is inapplicable to a voluntary plan submitted by a debtor with no "projected disposable income")

A minority line of cases adopts the debtors' "monetary" or "multiplicand" interpretation of "applicable commitment period" wherein the time period set forth in 1325(b)(4) is simply part of an equation to determine the total amount to be paid to unsecured creditors.  *See, e.g., In re McGillis*, 370 B.R. 720, 732 (Bankr.W.D.Mich.2007); *In re Swan*, 368 B.R. 12, 26-27 (Bankr. N.D.Cal.2007); *In re Mathis*, 367 B.R. 629 (Bankr.N.D.Ill.2007); *In re Brady*, 361 B.R. 765 (Bankr.D.N.J.2007); *In re Lawson,* 361 B.R. 215 (Bankr.D.Utah2007); *In re Fuger*, 347 B.R. 94, 96 (Bankr.D.Utah2006). *See also* 6 Keith M. Lundin, *Chapter 13 Bankruptcy* 3d ed. § § 500.1 at 500-2 (2000 & Supp.2006)("The applicable commitment period. . . is the multiplier in a formula that determines the *amount* of disposable income that must   be paid to unsecured creditors.").

Although the language of the statute is "plain," it is subject to different yet plausible interpretations.  Stated another way, is the focus of this portion of the statute upon the calculation of the dollar amount to be paid to unsecured creditors under the plan, or is the focus upon the length of time for which the debtor must commit his disposable income?   The courts listed herein that have addressed this issue have provided compelling analyses for both interpretations of §

1325(b)(4)(B). However, the court finds the temporal interpretation to be the most plausible. In particular, since the phrase "applicable commitment period" is composed of terminology that is not defined in the Code, courts advocating the temporal interpretation have relied upon dictionary definitions of each word. "Applicable" is defined as "fit or suitable for its purpose; appropriate;" commitment is defined as "the committing of oneself to a particular course of conduct;" and "period" is defined as "a length of time." Therefore, the "applicable commitment period," as one court observed, "stands for the appropriate length of time during which the debtor has agreed to make payments." *In re Slusher,* 359 B.R. 290, (Bankr.D.Nev.2007). *See also In re Mullen*, 369 B.R. 25, 29-30 (*citing In re Girodes*, 350 B.R. 31, 35 (Bankr.M.D.N.C.2006); *In re Alexander*, 344 B.R. 742, 751 (Bankr.E.D.N.C.2006); *In re Dew,* 344 B.R. 655, 661-62 (Bankr.N.D.Ala.2006); *In re McGuire*, 342 B.R. 608, 615 (BAnkr.W.D.Mo.2006); *In re Schanuth*, 342 B.R. 601, 607 (Bankr.W.D.Mo.2006); *In re Beasley*, 342 B.R. 280, 284 (Bankr.C.D.Ill.2006)); *In re Grant,* 364 B.R. 656, 662-63 (Bankr.E.D.Tenn.2007).

Furthermore, the legislative history for this portion of the BAPCPA amendments seems to reflect Congressional intent for a temporal interpretation:

> *Chapter 13 Plans to Have a Five-Year Duration in Certain Cases.* Paragraph 1 of § 318 of the Act amends Bankruptcy Code §§ 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years unless the court, for cause, approves a longer period up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. . .

H.R. Rep. No. 109-31, pt. 1, 1st Sess. 79 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 146.

The court acknowledges that the effect of interpreting Section 1325(b)(4) as imposing a temporal requirement with respect to calculation of plan payments may have the

dubious result of permitting the debtor to pay an amount derived from Form B22C calculations that is considerably less than an actual ability to pay as derived from Schedule I and J calculations. For example, in *In re Swan*, 368 B.R. 12 (Bankr.N.D.Cal.2007), the debtor's projected disposable income from form B22C of $59.50 multiplied by the 60-month applicable commitment period was $3,570; however, Schedules I & J disclosed net income of $525. The debtor proposed to remit $525 each month for 36 months with total plan receipts of $18,900. *Id.* at 14. Utilizing the debtor's multiplicand approach would net the unsecured creditors five times more than the temporal approach advocated by the trustee, and would reduce the time-frame of the plan from 5 to 3 years. *Id.* at 24. The *Swan* court adopted the multiplicand interpretation. *Id.* at 26-27. In cases like *Swan* where application of the temporal interpretation results in lower monthly plan payments and decreased dividends to unsecured creditors, the court notes that the trustee is not precluded from pursuing objections to confirmation on other grounds, including good faith.

In the brief submitted by counsel for the debtors, the argument is made that the debtors should not be held hostage for sixty months where they can satisfy the requirements of Section 1325(b)(1)(B), citing *In re Fuger,* 374 B.R. 94, 101 (Bankr.Utah.2006). However, this argument begs the question concerning which interpretation of "applicable commitment period" is correct. Furthermore, if there is no statutory intent to require any plan to remain in effect for the maximum period of time, then there would be no need to condition a plan of shorter duration upon a one hundred percent dividend for unsecured creditors. Accordingly, the court will sustain the trustee's objection and will afford the debtors an opportunity to amend their plan consistent with the ruling of the court.

# # #